UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA

        v.

LETORRANCE TRAVIS,

                Defendant.

**DECISION AND ORDER**

15-CR-33A

───────────────────────────────

## I. INTRODUCTION

In a prior case (11-CR-385), the Government charged defendant Letorrance Travis ("Travis") with cocaine conspiracy and possession occurring in 2011, with amounts exceeding five kilograms for the conspiracy and 500 grams for the possession and distribution. Magistrate Judge Jeremiah McCarthy ordered Travis released on conditions and maintained those conditions even when the Government argued for a bail violation. Magistrate Judge McCarthy rejected the argument for a violation, and Travis otherwise appears to have abided by his conditions of release.

The Government now has added Travis to this case, in a superseding indictment that adds allegations of overt acts by him that helped advance a much more serious conspiracy that included two murders. Because the allegations against Travis and his codefendants are more serious now, the Government has moved orally for revocation of bail. The Government argued that the new allegations rest on its continuing investigation and tip the balance in favor of

finding Travis a flight risk and danger to the community. Travis responded that the potential penalties for the new charges do not differ significantly from those for the old charges, meaning that Travis poses no greater flight risk or danger than he did before. Travis also argues that the Government is ignoring the last several years of release on bail, when he in fact did not flee and did not endanger anyone. The Court has to resolve whether a superseding indictment can override a favorable bail history and whether the superseding indictment here actually does so.

The Court held a detention hearing on July 10 and 13, 2015. For the reasons below, the Court denies the Government's oral motion for detention.

## II.   BACKGROUND

This case concerns allegations that Travis and four others were members of the Schuele Boys, a neighborhood street gang that operated primarily in the East Side of the City of Buffalo. The Court notes briefly that a related case (14-CR-134) and the two indictments in this case detail the roles of numerous others in advancing the gang's narcotics distribution. Travis entered the Government's allegations through the superseding indictment. (Dkt. No. 17.) Three of the counts in the superseding indictment concern Travis. In Count One, the Government accused Travis of racketeering conspiracy in violation of 18 U.S.C. § 1962(d). The Government attributed the following overt acts to Travis:

- On or about June 18, 2005, LETORRANCE TRAVIS, MARCEL WORTHY, and two associates were in a vehicle driven by LETORRANCE TRAVIS, when an unidentified gunman discharged a firearm at them in the vicinity of 1325 Fillmore Avenue, Buffalo, New York, near the neighborhood controlled by the Schuele Boys.  (*Id.* at 7.)

- On or before April 29, 2006, LETORRANCE TRAVIS, MARCEL WORTHY, and an associate drove to Edinboro, Pennsylvania, to visit AARON HICKS. Inside the vehicle was a quantity of marijuana and MARCEL WORTHY possessed on his person approximately $4,000 in U.S. currency.  (*Id.* at 8.)

- On or about December 18, 2010, AARON HICKS and JULIO CONTRERAS were in a vehicle, transporting 669.5 grams of marijuana, when they stopped at a house belonging to LETORRANCE TRAVIS, at 118 Courtland Avenue, Buffalo, New York, in the neighborhood controlled by the Schuele Boys.  (*Id.* at 9.)

- Sometime in or about August 2011, AARON HICKS, LETORRANCE TRAVIS, MARCEL WORTHY, and RODERICK ARRINGTON, and others, at various locations in Buffalo, New York, including 272 Schuele Avenue, the vicinity of Courtland Avenue and East Delavan Avenue, and the vicinity of Schuele Avenue and Northland Avenue, all in the neighborhood controlled by the Schuele Boys, and at a local restaurant, staged and created multiple music videos, produced by G.O.N.E. ENT a/k/a Gone Entertainment, for songs entitled "Front Door" and "Dinner Table."  In the videos, HICKS, TRAVIS, WORTHY, ARRINGTON, and associates displayed U.S. currency, suspected cocaine, and manpower, demonstrated the manufacturing of cocaine base, and paid tribute to deceased associates.  (*Id.* at 10.)

- On or about November 6, 2011, LETORRANCE TRAVIS possessed approximately 4 kilograms of cocaine in the vicinity of Forman Street, Buffalo, New York, near the neighborhood controlled by the Schuele Boys.  (*Id.*)

- On or about November 6, 2011, LETORRANCE TRAVIS possessed approximately 1.5 kilograms of cocaine at 68 Forman Street, Buffalo, New York, near the neighborhood controlled by the Schuele Boys.  (*Id.* at 11.)

- On or about November 6, 2011, LETORRANCE TRAVIS possessed drug ledgers for his cocaine distribution at 19 Slate Creek Drive, Apartment 3, Cheektowaga, New York.  (*Id.*)

- On or about November 6, 2011, LETORRANCE TRAVIS possessed approximately $170,000 in U.S. currency, proceeds of narcotics

- distribution, at 34 Crossman Avenue, Buffalo, New York, near the neighborhood controlled by the Schuele Boys.  (*Id.*)

- On or about March 6, 2013, LETORRANCE TRAVIS filed an Assumed Name Certificate with the Erie County Clerk's Office, as "Gone Auto Sales."  From that date through the end of the conspiracy, members and associates of the Schuele Boys used the storefront for Gone Auto Sales at 2618 Bailey Avenue, Buffalo, New York, in the neighborhood controlled by the Schuele Boys, as a covert location from which to distribute narcotics.  (*Id.* at 12.)

In Count Two, the Government accused Travis and others of a drug conspiracy in violation of 21 U.S.C. § 846.  In Count Three, the Government accused Travis and others of possessing and using firearms in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.

The Government revisited Travis's release status after filing the superseding indictment.  The Court arraigned Travis on July 8, 2015.  That day, the Government moved for detention.  The Court held a hearing over two days, on July 10 and 13, 2015.  The Government did not deny that Magistrate Judge McCarthy released Travis in Travis's older case.  Rather, the Government argued that this case incorporated Travis's older case into it and also dramatically expanded it.[1]  Whereas Travis's older case centered around a single, albeit large, drug transaction, this case, according to the Government, makes Travis just one part of a large and dangerous street operation that used guns and murders to defend its drug turf.  The Government argued that the new

---

[1] The Government stated at the detention hearing that Case No. 11-CR-385 would be dismissed as against Travis.  As of this writing, dismissal has not yet occurred.

4

charges cast Travis as a much greater danger to the community and give him much more incentive to flee, thus requiring revocation of bail.

    Travis opposed the Government's oral motion for detention. Travis argued that the Court should not cast aside the last several years of uneventful release just because the Government has added to its unsubstantiated allegations. As for substantiation, Travis argued that the Government made an insufficient proffer of the evidence that would tie Travis to whatever racketeering enterprise the Schuele Boys might be. Even the overt acts on the face of the superseding indictment do little, according to Travis, to connect him to activity that would endanger the community. Travis argued that the alleged overt acts from 2005 and 2006 are old and do not explicitly allege any illegal conduct. Travis contended that the 2010 overt act also fails to allege actual illegal conduct. As for the 2011 alleged overt acts, nearly all of them were known in the older case; the only one that was not concerned the music videos and does not rise to the level of illegal conduct in itself. The 2013 alleged overt act concerns the creation of a corporate entity and is too conclusory about what Travis actually did that was illegal. Finally, Travis argued essentially that Count Three doesn't make sense, because it alleges firearm use that would have constituted an overt act in furtherance of Count One, whereas no such overt act appeared in Count One.

5

## III. DISCUSSION

"The Eighth Amendment to the Constitution states that '[e]xcessive bail shall not be required.' U.S. Const. amend. VIII. Consistent with this prohibition, 18 U.S.C. § 3142(b) requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Statutory factors to be considered when assessing flight or danger include the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

With respect to flight risk, "the government carries a dual burden in seeking pre-trial detention. First, it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *Sabhnani*, 493 F.3d at 75 (citations omitted). "To order detention, the district court must find, after a hearing, that the government has established the

6

defendant's dangerousness by clear and convincing evidence. The rules of evidence do not apply in a detention hearing. Further, the government may proceed by proffer." *U.S. v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citations omitted).

In reviewing the arguments from the parties, what draws the Court's immediate attention is the significant difference between the two halves of the question that the Court posed in the Introduction above. Under the right circumstances, serious charges introduced in a superseding indictment and supported by some kind of evidentiary showing can override a history of compliance with release conditions. Testimony at a detention hearing concerning new charges, though not necessary, certainly helps. *See U.S. v. Vendetti*, No. 10-CR-360A, 2011 WL 2133770, at *4 (W.D.N.Y. May 26, 2011) (Arcara, *J.*) (taking testimony about newly discovered attempts at witness tampering and concluding, "The defendant has been compliant with the terms and conditions of his bail and has not made any post-indictment efforts to commit witness tampering. However, the charges in the superseding indictment raise the stakes against him considerably. The charges against him could not be more serious. If convicted of Count 3 of the indictment (committing a murder in aid of racketeering), Vendetti faces a mandatory sentence of life imprisonment."). Proffers can suffice as well when they explain how the Government recently discovered that a defendant had an expanded role in a conspiracy. *Cf. U.S. v.*

7

*Gloss*, No. 08 CR 823 (HB), 2009 WL 161063, at *1 (S.D.N.Y. Jan. 21, 2009) (revoking bail based on a superseding indictment and a proffer that the defendant "played a supervisory role in the conspiracy and that the conspiracy lasted for at least several months"); *U.S. v. Rotondo*, No. 99 CR 1199 LMM, 2001 WL 303740, at *2 (S.D.N.Y. Mar. 28, 2001) (revoking bail after a superseding indictment where "defendant's supervisory role in the alleged enterprise coupled with the government's proffer as to defendant's involvement in a 1999 conspiracy to kill Scarabino . . . persuades the Court that detention is required").

The second half of the question presented is another matter, however, and the Court is struck by how little of a proffer the Government made beyond repeating the allegations themselves. "[W]hile the informality of bail hearings serves the demands of speed, the magistrate or district judge must also ensure the reliability of the evidence, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question." *U.S. v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (internal quotation marks and citation omitted). Here, the Government noted that Travis is charged with racketeering conspiracy, that it attributes certain overt acts to him, and that he faces life in prison if convicted at trial. The charges are very serious, and the seriousness of the charges together with the presumption in favor of detention are factors to consider. That said, the Court does not know how to assess the

8

accuracy of the Government's evidentiary sources because the Government did not provide any. The Government certainly would be under no obligation right now to identify specific witnesses or communications, but it made no proffer at all about any intercepted communications or about any direct surveillance. The Government made no proffer with respect to physical evidence or the existence of any informants. *Cf. U.S. v. Jackson*, 823 F.2d 4, 7 (2d Cir.1987) ("As to the weight of the evidence, the government apparently has numerous informants as well as physical evidence to support its charges. Indeed, [defendant] has made no significant attack on the government's proffered evidence."). The only available evidence concerning the strength of the allegations comes from Travis's pre-indictment complaint in his older case. That complaint makes reference to statements that Travis allegedly made admitting to a drug transaction. Even there, Magistrate Judge McCarthy knew about that evidence and considered it when ordering Travis's release.

As for the overt acts in the superseding indictment, at least some of them read as if the Government has information that it very much does not want to disclose. For example, overt act number six (Dkt. No. 17 at 7) states that person or persons unknown fired at Travis on June 18, 2005. How does *being fired at* further a racketeering conspiracy? Did Travis allegedly engage in conduct that somehow prompted a dispute? *Cf. U.S. v. Williams*, No. S2 07 CR. 1102 JSR, 2008 WL 686622, at *1 (S.D.N.Y. Mar. 12, 2008) (ordering release in part where

9

"the Government, which had in the meantime obtained the second superseding indictment adding the witness tampering and retaliation charges, declined to call the alleged victim of those crimes, a confidential informant, and the defendant also declined, as was his right, to take the stand.  This effectively deprived the Court of any truly meaningful basis to evaluate those charges.").  As another example, overt act number 18 (Dkt. No. 17 at 9) states that two codefendants stopped at a house belonging to Travis while transporting 669.5 grams of marijuana.  If nothing else, alleging such a specific amount implies that the codefendants did more than just "stop at a house," and that Travis had some awareness of what was happening.  Why not say so?  To take just one more example, overt act number 23 (Dkt. No. 17 at 10) states that Travis and others made music videos that were laden with drug imagery and themes.  To distinguish these music videos from, say, any number of music videos available on YouTube, the Government likely has some information about how these music videos played a direct role in raising money for the alleged enterprise or in threatening rival enterprises.  Why not make a proffer of just a little information?

 Under these circumstances, Travis's compliance with his release conditions, coupled with the paucity of other factors in favor of detention, suffice to rebut any presumption and to weigh in favor of continued release.  At this point, though, one problem remains.  The amount of Travis's bond needs to be revisited.  Magistrate Judge McCarthy had set bond at $100,000 secured by

$25,000 of equity in Travis's mother's property located at 48 Courtland Avenue. (Case No. 11-CR-385, Dkt. No. 37.) That security will not be enough to address the new allegations. The new allegations, while not enough to justify detention, are serious and warrant additional security. To regain release, Travis will have to find at least one additional surety with no ties to this case and with no criminal history, and the $100,000 bond will have to be at least 50% secured. Defense counsel will notify the Court when Travis has made such an arrangement, at which point the Court will schedule a status conference to have a new bond signed by Travis and all sureties and to have the United States Probation Office suggest any other adjustments to release conditions. *See also U.S. v. Gambino*, 809 F. Supp. 1048, 1059 (S.D.N.Y. 1992) (suggesting that sureties should receive notice of a new indictment and an opportunity to renew their postings if the new indictment significantly increases the risk of flight). Travis will remain in custody until he makes arrangements for additional bail. Continued custody will render moot the Government's request to stay any order of release pending any appeal to Judge Arcara.

## IV.　CONCLUSION

For all of the foregoing reasons, the Court denies the Government's oral motion for detention, made upon arraignment for the superseding indictment.

SO ORDERED.

　　　　　　　　　　　　　　　　　　_/s Hugh B. Scott_
　　　　　　　　　　　　　　　　　　HONORABLE HUGH B. SCOTT
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

DATED: July 21, 2015